**William GAMBEL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. C14–90–01071–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 6, 1992.

Thomas D. Kanak, Huntsville, for appellant.

David P. Weeks, Kay Douglas, Huntsville, for appellee.

Before JUNELL, ROBERTSON and DRAUGHN, JJ.

## OPINION

DRAUGHN, Justice.

This is an appeal from a conviction for delivery of a controlled substance. The jury found appellant guilty and assessed punishment at 25 years confinement in the Texas Department of Criminal Justice, Institutional Division. In his sole point of error, appellant argues that the trial court erred by swearing in a jury panel where the State racially exercised its peremptory challenges to exclude all the black venirepersons. We affirm.

On October 15, 1990, this case was called for trial and the State and appellant's counsel conducted voir dire on a venire panel of 47 persons, including six black prospective jurors. Two venirepersons were excused for cause and the State exercised peremptory strikes against four black and four non-black venirepersons. After the jury was selected, but prior to the jurors being sworn in, appellant's counsel filed a *Batson* motion. On October 16, 1990, the trial court held a hearing and the prosecutor gave his reasons for exercising his peremptory challenges. The trial court ruled that the jurors were excluded for non-racial reasons and denied appellant's motion.

In his sole point of error, appellant alleges that the trial court erred in swearing in the jury panel because the State systematically exercised its peremptory challenges to exclude all the black venirepersons which were the same race as appellant on a racial basis. Specifically, he contends that the record does not support the trial court's finding of no purposeful racial discrimination.

To establish a prima facie case of purposeful discrimination in selection of the jury, the U.S. Supreme Court has stated:

[T]he defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised

peremptory challenges to remove from the venire members of the defendant's race ... [T]hese facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.

*Batson v. Kentucky*, 476 U.S. 79, 96, 106 S.Ct. 1712, 1723, 90 L.Ed.2d 69 (1986). Once the defendant makes a prima facie showing of purposeful discrimination, the burden shifts to the State to come forward with neutral explanations for challenging black jurors. *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723. The prosecutor must give clear and reasonably specific explanations of legitimate reasons for his use of peremptory challenges. *Whitsey v. State*, 796 S.W.2d 707, 713 (Tex.Crim.App.1989).

In reviewing the State's race-neutral reasons, the Court of Criminal Appeals has noted a non-exclusive list of factors to be considered:

1. The reason given for the peremptory challenge is not related to the facts of the case;

2. [T]here was a lack of questioning to the challenged juror or a lack of meaningful questions;

3. Disparate treatment—persons with the same or similar characteristics as the challenged juror were not struck;

4. Disparate examination of members of the venire, i.e., questioning a challenged juror so as to evoke a certain response without asking the same question of other panel members; and

5. [A]n explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically.

*Id.* at 713–14. If the prosecution has sustained his burden of producing race-neutral explanations, the burden to establish purposeful racial discrimination shifts back to the appellant who must then rebut these explanations or show they were merely a pretext. *Williams v. State*, 804 S.W.2d 95, 101 (Tex.Crim.App.1991), *cert. denied*, —— U.S. ——, 111 S.Ct. 2875, 115 L.Ed.2d 1038 (1991). It remains the ultimate burden of the appellant to persuade the trial court by a preponderance of the evidence that the allegations of purposeful discrimination were true. *Tennard v. State*, 802 S.W.2d 678, 681 (Tex.Crim.App.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2914, 115 L.Ed.2d 1077 (1991). After viewing the evidence adduced relevant to the *Batson* claim in a light most favorable to the trial court's ruling, the reviewing court will require reversal only if the trial court's findings of fact are "clearly erroneous" in light of the entire record. *Williams*, 804 S.W.2d at 101.

■ At the *Batson* hearing in the case at bar, the prosecutor testified that he exercised four of his eight peremptory challenges on black venirepersons. Although the appellant does not specifically mention black venireperson 10, the prosecutor stated he struck her for the race-neutral reason that she had attended elementary and secondary school with the appellant and knew his family.

■ The prosecutor testified he struck black venireperson 18 for several reasons. District Attorney Frank Blazek thought he remembered his name as a defendant or party in a prior child molestation case. Secondly, the prosecutor was unhappy with the venireperson's "angry" and "indifferent" demeanor and appearance which portrayed a man who "sat with his arms crossed, leaning back in the chair and looking like a man that did not want to be there." The prosecutor indicated he did not want somebody in his jury that did not want to be there. Although appellant contends the prosecutor did not ask this venireperson any distinct questions, we believe that the prosecutor's responses were specific and detailed. We conclude that the prosecutor's decision to exclude a prospective juror who he believed was previously prosecuted by the State is a sufficient nondiscriminatory explanation. Moreover, the contention of disparate jury treatment by the prosecutor is justified by the fact that the prosecutor testified he also struck nonblack venireperson 12 for the same "attitude" problem.

■ Next, the prosecutor stated he struck venireperson 31 because he was

wearing an earring, a trait he associated with people involved in the drug business through his drug investigations. *Batson* leaves room for the State to exercise its peremptory challenges on the basis of the prosecutor's legitimate "hunches" and past experience, so long as racial discrimination is not the motive. *Keeton v. State*, 749 S.W.2d 861, 865 (Tex.Crim.App.1988). While the reason articulated may seem foolish to us as outside observers, foolishness is not the criteria. There is no evidence presented that he left other non-black jurors on the panel who wore earrings. After reviewing the record, we believe the explanation articulated by the prosecutor is a sufficient race-neutral justification which becomes even more relevant in light of the fact that this case pertains to a drug offense. In any event, it is moot because the evidence shows that venireperson 31 would not have been reached for the jury panel even if he had not struck him because the last juror picked was venireperson 30.

■ Appellant also argues he has third party standing to raise the exclusion of venireperson 7 as a violation of his equal protection right under *Powers v. Ohio*, —— U.S. ——, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). We find this argument has no merit. In *Powers*, the U.S. Supreme Court concludes that the Equal Protection Clause prohibits a prosecutor from using his peremptory challenges to exclude otherwise qualified and unbiased persons from the petit jury solely by reason of their race. *Id.* 111 S.Ct. at 1370. The Supreme Court set out a three-part test which must be satisfied in order for a litigant to bring actions on behalf of third parties. For the first prong, the litigant must have suffered an "injury-in-fact," thus giving him or her a "sufficiently concrete interest" in the outcome of the issue in dispute. *Id.* In the present case, when the prosecutor was questioned by appellant's counsel about his reason for striking venireperson 7, his initial reaction was surprise as he stated, "I struck Antony John D'Cunha, who is a white man." After appellant's counsel informed him this prospective juror was from India, the prosecutor testified:

I can say in all honesty I did not strike Mr. D'Cunha because he was from a third-world country or any other reason. I didn't consider the man black. I couldn't have worried about that.

We believe the evidence reflects that the prosecutor did not utilize any race-based peremptory challenge when he struck venireperson 7. Under the first criteria set out in *Powers*, we find that the appellant has failed to show any "injury-in-fact" and, therefore, he has no standing to contest the exclusion of venireperson 7 from the jury panel. While the prosecutor did not personally question venireperson 7, we conclude his inexperience and belief that this particular potential juror was white indicates a non-discriminatory basis for his peremptory challenge. If the prosecutor truly believed that the juror struck was white as he testified under oath, then it would be absurd for us to hold that he intended to discriminate against the individual because he was really Indian. Since the prosecutor so testified and there was no rebuttal or cross examination, it becomes solely a matter of the prosecutor's credibility. And that is uniquely a question for the trial judge, which he resolved in favor of the prosecutor. The trial judge, in essence, said he believed the prosecutor. We cannot, from our appellate perch, second-guess the trial judge and say he lied. We also note, in conclusion, that the prosecutor struck white venireperson 20 without asking him any questions either.

After a careful examination of the independent justifications provided by the prosecutor for his peremptory challenges against the black venirepersons, we find the trial judge's finding of no purposeful discrimination was supported by the evidence and was not clearly erroneous. The trial judge who observed the entire voir dire proceeding was in the best position to ascertain the credibility of the prosecutor and appellant's counsel. Thus, considering the evidence in a light most favorable to the trial court's ruling, we find that the record supports the trial court's determination that the prosecutor honestly articulated legitimate race-neutral reasons for

exercising his peremptory challenges. We overrule appellant's sole point of error.

We affirm the trial court's judgment.